UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Neosha Rogers,                                     Case No. 22-25190

      Debtor.                                  Chapter 13

Neosha Rogers,

      Plaintiff,

v.                                                     Adv. No. 22-2129

TitleMax of Wisconsin, Inc.,

      Defendant.

**DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

      The parties filed cross motions for summary judgment in this action for turnover of the debtor's vehicle and asserted violations of the automatic stay. TitleMax, the defendant, seeks summary judgment and contends that under Justice Sotomayor's concurrence in *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021), 11 U.S.C. § 362(a)(3) permits a car lender to retain possession of a repossessed vehicle postpetition while demanding proof of adequate protection. In her cross motion, Ms. Rogers, the plaintiff-debtor, asserts that TitleMax's failure to return her vehicle immediately upon the filing of her bankruptcy petition violated the automatic stay, and seeks damages under 11 U.S.C. §§ 362(k) and 542(a). For the reasons set forth below, the Court grants judgment in favor of TitleMax.

**JURISDICTION**

      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(b)(2)(A), (E), and (O), and the July 16, 1984 order of reference in this district.

## FACTS

The following facts are undisputed or established by judicial notice of the Court's docket. In January 2020, Ms. Rogers entered into an installment loan agreement with defendant TitleMax, pledging her 2011 Ford Flex as collateral for the loan. ECF No. 21-1, at 1; Case No. 22-25190-beh, Claim No. 12-1, at 5, 12. TitleMax perfected its lien on the vehicle that same month. Case No. 22-25190-beh, Claim No. 12-1, at 12.

Since obtaining the loan from TitleMax, Ms. Rogers has filed three Chapter 13 bankruptcy cases. The first, Case No. 20-20937-beh, was filed in February 2020 and dismissed in November 2021. Several weeks after the dismissal, TitleMax repossessed Ms. Rogers' Ford Flex. ECF No. 21-1, at 1. In February 2022, Ms. Rogers filed another Chapter 13 case, Case No. 22-20608-beh, and TitleMax returned her vehicle. *Id.* This second case was dismissed in October 2022. On November 10, 2022, TitleMax again repossessed the Ford Flex, and a sale was scheduled to take place on or after December 10, 2022. *Id.*; ECF No. 27-1. Fifteen days after the repossession, on November 25, 2022, Ms. Rogers filed her current Chapter 13 case.

That same day, Ms. Rogers' counsel e-mailed counsel for TitleMax and requested the return of the vehicle. ECF No. 21-2; ECF No. 21-3, at 4. On November 28, counsel for TitleMax responded, requesting proof of collision and comprehensive insurance coverage listing TitleMax as the loss payee, and noted "[n]either the Schedules nor Plan have been filed yet, in order to assess adequate protection." ECF No. 21-3, at 2. Although not agreeing to release the vehicle, TitleMax canceled the scheduled vehicle sale due to the bankruptcy filing. ECF No. 27-1. Also on November 28, Ms. Rogers filed a motion to continue the automatic stay of 11 U.S.C. § 362(a) past 30 days, with a hearing scheduled for December 20.

On November 29, Ms. Rogers' counsel provided TitleMax proof of insurance, *see* ECF No. 21-3, at 2, and also filed a Chapter 13 plan and budget (Schedules I and J). Two days later, TitleMax objected to Ms. Rogers' motion to continue the stay, challenging whether its collateral was necessary for an

effective reorganization (because the debtor owned another vehicle), whether the bankruptcy case had been filed in good faith, and whether TitleMax was adequately protected by an extension of the automatic stay, both because of Ms. Rogers' multiple bankruptcy filings and because Ms. Rogers' plan proposed to pay its claim at less than the retail value of the vehicle and at a below-prime interest rate. Case No. 22-25190-beh, ECF No. 23.

On December 2, Ms. Rogers filed a motion for turnover of her vehicle under 11 U.S.C. § 542(a), which the Court denied for procedural reasons. *See* Case No. 22-25190-beh, ECF Nos. 24, 32, 34, 37. Ms. Rogers subsequently initiated this adversary proceeding on December 12, again seeking turnover under § 542(a) along with corresponding damages.

On December 20, the Court held an evidentiary hearing on Ms. Rogers' motion to continue the automatic stay, after which it continued the stay on the condition that Ms. Rogers make six months of timely payments under her proposed plan. The next day, TitleMax released the Ford Flex to Ms. Rogers. ECF No. 21-1, at 1; ECF No. 21-4.

TitleMax thereafter filed a motion to dismiss Ms. Rogers' adversary complaint as moot on the basis that her vehicle had been returned. ECF No. 4. The Court granted the motion, noting that 11 U.S.C. § 542(a) does not include a provision for damages, but granted Ms. Rogers leave to amend. ECF Nos. 7, 10. Ms. Rogers subsequently filed her amended complaint, alleging violations of 11 U.S.C. §§ 362(a)(3), 362(a)(4), 362(a)(6), and 542(a), and seeking actual damages under § 542(a) and actual and punitive damages under 11 U.S.C. § 362(k). ECF No. 14. For punitive damages, Ms. Rogers seeks a monetary award as well as injunctive relief—release of TitleMax's lien on the Ford Flex. *Id.* at 4. The parties filed cross-motions for summary judgment on all counts.

## ANALYSIS

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056. "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute is genuine, and summary judgment therefore is inappropriate, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

At the summary judgment stage, the Court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is something to try—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250. In reviewing the evidence, the Court must draw all *reasonable* inferences in the light most favorable to the non-moving party. *See Cont'l Casualty Co. v. Nw. Nat. Ins. Co.,* 427 F.3d 1038, 1041 (7th Cir. 2005). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,* 994 F.3d 869, 876 (7th Cir. 2021). In other words, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018) (internal quotation marks omitted); *see also McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (courts are "not required to draw every conceivable inference from the record," and "mere speculation or conjecture will not defeat a summary judgment motion") (internal citations and quotation marks omitted).

The fact that the parties filed cross-motions for summary judgment does not alter the analysis. When presented with cross-motions for summary judgment, the Court must consider the motions separately, and "construe all

[reasonable] inferences in favor of the party against whom the motion under consideration is made." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018).

The first three counts of Ms. Rogers' amended complaint are premised on 11 U.S.C. § 362(k)(1), which allows "an individual injured by any willful violation of a stay provided by [§ 362]" to recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages. Ms. Rogers argues that she is entitled to such damages because TitleMax's conduct violated 11 U.S.C. §§ 362(a)(3), (4), and (6). In the fourth count of her amended complaint, Ms. Rogers seeks damages for TitleMax's alleged violation of 11 U.S.C. § 542(a) by failing to return her vehicle promptly after she filed her bankruptcy petition. For the reasons that follow, the Court concludes that TitleMax is entitled to judgment as a matter of law on all counts.

**A.    TitleMax's conduct did not violate 11 U.S.C. § 362(a)(3).**

Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Recently, the United States Supreme Court held that "mere retention of estate property after the filing of a bankruptcy petition does not violate § 362(a)(3) of the Bankruptcy Code." *City of Chicago v. Fulton,* 141 S. Ct. 585, 592 (2021). In *Fulton,* the City of Chicago refused to return debtors' vehicles, which it had impounded prepetition for the nonpayment of fines. The Supreme Court concluded that the City's conduct did not violate § 363(a)(3), explaining:

> The language used in § 362(a)(3) suggests that merely retaining possession of estate property does not violate the automatic stay. Under that provision, the filing of a bankruptcy petition operates as a "stay" of "any act" to "exercise control" over the property of the estate. Taken together, the most natural reading of these terms – "stay," "act," and "exercise control" – is that § 362(a)(3) prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed.

> . . . The suggestion conveyed by the combination of these terms is that § 362(a)(3) halts any affirmative act that would alter the status quo as of the time of the filing of a bankruptcy petition.

*Id.* at 590. Notably, the Supreme Court considered the phrase "exercise control" as "simply extend[ing] the stay to acts that would change the status quo with respect to intangible property and acts that would change the status quo with respect to tangible property without 'obtain[ing]' such property." *Id.* at 592.

In an attempt to avoid the application of *Fulton* here, Ms. Rogers asserts that TitleMax did *more* than just retain her vehicle. Instead, it took affirmative action to "disrupt[] the status quo" by requesting adequate protection—specifically, proof of insurance and the filing of Chapter 13 schedules and a plan (with "potentially objectionable terms on the valuation and treatment of the Vehicle")—before it would consider releasing the vehicle. *See* ECF No. 22, at 10; *id.* at 5 ("Defendant first disrupted the status quo of the Vehicle post-petition by requiring Plaintiff to file a Chapter 13 plan and completed schedules (and associated valuation and terms placed on the Vehicle) as a prerequisite for turnover, and Defendant disrupted the status quo a second time when it objected to the terms included in these filings in an effort towards determining a new set of terms for treatment of the Vehicle. Each of Defendant's demands for 'adequate protection' constitutes an affirmative act to exert influence over the Vehicle.").

First, Ms. Rogers has submitted no admissible evidence to support her allegations that TitleMax made demands for "potentially objectionable" treatment of its claim as a condition precedent to returning her vehicle, other than point to its objection to her motion to continue the automatic stay. The record is devoid of any suggestion that TitleMax attempted to condition the return of Ms. Rogers' vehicle on specific treatment of its claim in a Chapter 13 plan.

But more problematic is Ms. Rogers' *legal* argument that TitleMax's request for adequate protection in the form of proof of insurance violates § 362(a)(3). Ms. Rogers contends that "[a] number of holdings prohibit creditors

from requiring proof of adequate protection before turnover," ECF No. 22, at 6 (citing *In re Sharon*, 676, 683 (B.A.P. 6th Cir. 1999), and *In re Brooks*, 207 B.R. 738, 741 (Bankr. N.D. Fla. 1997)). *See also id.* ("Defendant may not 'unilaterally withhold turnover of estate property based on their own belief that they are not adequately protected.'") (quoting *In re Williams*, 316 B.R. 534, 541 (Bankr. E.D. Ark. 2004)). The cases Ms. Rogers cites—*Sharon*, *Brooks*, and *Williams*—were all decided before *Fulton*, hold that a creditor's failure to return a vehicle repossessed prepetition is an act to "exercise control" of property in violation of § 362(a)(3), and rely on authority expressly abrogated by *Fulton* (e.g., *In re Del Mission Ltd.*, 98 F.3d 1147 (9th Cir. 1996), and *In re Knaus*, 889 F.2d 773 (8th Cir. 1989)). Simply put, they are no longer good law.[1]

By inquiring about insurance and adequate protection, TitleMax did not engage in any conduct that altered the status quo of the vehicle as of the time Ms. Rogers filed her bankruptcy petition—which *Fulton* says is required to "exercise control" of property—and therefore did not violate 11 U.S.C. § 362(a)(3).

---

[1] While not binding, Justice Sotomayor's concurrence in *Fulton* is instructive. In contemplating possible avenues for debtors to re-acquire repossessed vehicles, she notes that a debtor may seek turnover under section 542(a), while a creditor with a security interest in the collateral is entitled to adequate protection under section 363(e):

> Although the Court today holds that § 362(a)(3) does not require creditors to turn over impounded vehicles, bankruptcy courts are not powerless to facilitate the return of debtors' vehicles to their owners. Most obviously, the Court leaves open the possibility of relief under § 542(a). That section requires any "entity," subject to some exceptions, to turn over "property" belonging to the bankruptcy estate. 11 U.S.C. § 542(a). The debtor, in turn, must be able to provide the creditor with "adequate protection" of its interest in the returned property, § 363(e); for example, the debtor may need to demonstrate that her car is sufficiently insured. In this way, § 542(a) maximizes value for all parties involved in a bankruptcy: The debtor is able to use her asset, which makes it easier to earn an income; the debtor's unsecured creditors, in turn, receive timely payments from the debtor; and the debtor's secured creditor, for its part, receives "adequate protection [to] replace the protection afforded by possession."

141 S. Ct. at 594.

## B. TitleMax's conduct did not violate § 362(a)(4).

Section 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate." Ms. Rogers urges that TitleMax's retention of the Ford Flex, alone, was an act to enforce its lien. *See* ECF No. 22, at 3 ("After Plaintiff's bankruptcy was filed, Defendant withheld the Vehicle in hopes of selling it at auction and completing the process of enforcing the lien . . . . Withholding the Vehicle in and of itself constitutes an effort to enforce Defendant's lien . . . . Defendant did withhold the Vehicle in order to continue the process of enforcing its lien and collect its claim."). She offers no legal support for this assertion, and the Court has found none.

"Enforcement" is defined as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." Black's Law Dictionary (11th ed. 2019). "Enforcement of a lien generally involves an affirmative act by the creditor against the collateral"—for example, seizure, foreclosure, or sale. *In re Laux*, 181 B.R. 60, 62 (Bankr. S.D. Ill. 1995) (creditor's administrative freeze on debtor's account was not an act to "enforce" a lien in violation of § 362(a)(5)); *see also In re Briggs*, 143 B.R. 438, 446 (Bankr. E.D. Mich. 1992) ("The enforcement of what might be called a 'conventional' lien—say a security interest in the debtor's automobile— generally involves an affirmative act by the creditor: it can repossess the car or, if the car has already been repossessed, sell it as a means of satisfying the outstanding indebtedness. Section 362(a)(5), in conjunction with § 362(a)(4), precludes the creditor from taking such actions, which is of course consistent with the stay's essential purpose of preserving the *status quo* as of filing of the bankruptcy petition."); *Margavitch v. Southlake Holdings, LLC (In re Margavitch)*, Case No. 5:19-05353-MJC, Adv. No. 5:20-00014-MJC, 2021 WL 4597760, at *6–7 (Bankr. M.D. Pa. Oct. 6, 2021) (creditor's refusal to withdraw prepetition attachment lien and release funds in debtor's bank account did not violate § 362(a)(4) because, in light of *Fulton*, "it logically follows that an affirmative post-petition 'act' is necessary to constitute a violation of [§ 362(a)(4)].").

TitleMax's actions to enforce its lien—repossession of Ms. Rogers' vehicle—occurred prepetition. The record is clear that TitleMax took no further enforcement action, such as selling the vehicle, postpetition. Retention of the vehicle alone was not an act to enforce its lien in violation of § 362(a)(4).[2]

**C.   TitleMax's conduct did not violate § 362(a)(6).**

Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." According to Ms. Rogers, TitleMax's "[w]ithholding the Vehicle in and of itself constitutes an effort to . . . collect its claim." How? She doesn't say—other than to add that TitleMax "withheld the Vehicle in hopes of selling it at auction . . . while likely continuing collection of its claim by collecting a deficiency." ECF No. 22, at 3.

Again, this argument lacks both factual and legal support. TitleMax canceled the sale of the vehicle, which it had scheduled prepetition, days after Ms. Rogers filed her bankruptcy petition, and made no demands for repayment of its loan as a condition of returning the vehicle to her. While a refusal to return property can, in some situations, amount to an act to "collect" a debt, the evidence does not support such a finding here. For example, in *In re Kuehn*, 563 F.3d 289 (7th Cir. 2009), the Seventh Circuit determined that a university violated section 362(a)(6) by refusing to provide a transcript to a student-debtor due to an unpaid prepetition tuition debt. The student had a state-law right to receive the transcript and was willing to pay the university for a copy in advance, and the university conceded that its policy of withholding transcripts absent repayment was designed to induce students to pay their tuition debts. *Id.* at 292–93. The court reasoned that the university's inaction, which was

---

[2] When a lien is possessory, some courts have considered that mere retention of collateral may amount to enforcement of the lien. *See, e.g.*, *In re Shannon*, 590 B.R. 467, 479 (Bankr. N.D. Ill. 2018), *vacated and remanded on other grounds by Fulton* ("A possessory lien may be enforced by the retention of possession."); *see also In re Cordova*, 635 B.R. 321, 349 (Bankr. N.D. Ill. 2021) (debtors plausibly stated a claim for relief under § 362(a)(4) by alleging that city retained debtors' impounded vehicles to perfect its liens). But TitleMax holds a non-possessory lien; possession is required neither to enforce nor to perfect its lien.

designed to coerce payment, was an attempt to collect a debt in violation of section 362(a)(6).

Here, Ms. Rogers has submitted no evidence of such coercive behavior or any action by TitleMax designed to induce her to pay her debt before releasing her vehicle. At most, she offers only speculation about TitleMax's postpetition motives. *See, e.g.*, ECF No. 28, at 2 ("[T]he only purpose of repossessing Plaintiff's vehicle was to sell it in order to enforce its lien and collect its claim. Defendant has established no alternative motive for retention of Plaintiff's vehicle, as no alternative motive is plausible."). This is not enough to defeat TitleMax's request for summary judgment. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("'[I]t is well-settled that speculation may not be used to manufacture a genuine issue of fact.' . . . [A]ll the plaintiffs have to go on is a collective hunch about the defendant's motives, which in itself will not survive a motion for summary judgment.") (citing *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors . . . .")).

**D.      Damages for any alleged violation of § 542(a) are not warranted.**

Ms. Rogers' last cause of action seeks damages based on TitleMax's alleged violation of 11 U.S.C. § 542 in failing to return her vehicle promptly.

Section 542(a), with two exceptions, provides:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

According to Ms. Rogers, TitleMax's retention of her vehicle for 26 days postpetition—prior to a court determination of whether TitleMax was adequately protected (a dispute raised in connection with her motion to continue the automatic stay) and absent a court order compelling turnover—

violated this provision of the Code. In other words, section 542(a) is self-executing and requires unconditional, immediate turnover. But the law is not so clear. *Compare In re Cordova*, 635 B.R. 321, 338 (Bankr. N.D. Ill. 2021) ("'By its express terms, section 542(a) is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover.'") (quoting 5 Collier on Bankruptcy ¶ 542.02 (16th ed.)), with *In re Denby-Peterson*, 941 F.3d 115, 128 (3d Cir. 2019) ("[I]n our view, Section 542(a)'s turnover provision is not self-executing; in other words, a creditor's obligation to turn over estate property to the debtor is not automatic. Rather, the turnover provision requires the debtor to bring an adversary proceeding in Bankruptcy Court in order to give the Court the opportunity to determine whether the property is subject to turnover under Section 542(a).").[3]

Courts that reason section 542 is not self-executing do so in part because creditors have the right to pursue adequate protection before turnover:

> [Section] 542(a) also limits turnover to property that can be used under § 363. Under § 363(e) the creditor can obtain an order prohibiting a proposed use of the property unless the estate provides adequate protection. This constitutes a significant defense to the grant of a turnover order under § 542(a). . . .
>
> Logically, therefore, the creditor should be entitled to hold onto the property during the pendency of the § 542 action until the adequate protection question is resolved. The obvious rationale implicit in permitting the secured creditor to retain possession of the seized property while opposing turnover under § 542(a) is that the creditor may suffer the very harm that adequate protection is designed to avoid if the property is turned over to the trustee before the trustee proves that the creditor is being given the adequate protection to which it is entitled.

*In re Young*, 193 B.R. 620, 625 (Bankr. D.D.C. 1996).

---

[3] Justice Sotomayor's observations in *Fulton* that turnover proceedings "can be quite slow," that "[o]ne hundred days is a long time to wait for a creditor to return your car," and that Congress could "enact[] entirely new statutory mechanisms that require creditors to return cars to debtors in a timely manner," 141 S. Ct. at 594–95, also lend support to the idea that turnover obligations under section 542 are not automatic.

Ms. Rogers disputes this logic, asserting that "§ 542(a) does not require proof of adequate protection for turnover." ECF No. 22, at 7. Instead, she says, "the Bankruptcy Code provides only one avenue to obtain adequate protection, specifically by filing a motion for relief from stay under § 362(d)(1)." *Id.* at 5. In her view, TitleMax "should have returned the Vehicle promptly and filed a motion for relief with the Court." *Id.* As TitleMax points out, however, filing a motion for relief from the stay prior to the resolution of the debtor's motion to continue the stay past 30 days would have been duplicative and inefficient. Moreover, had TitleMax returned Ms. Rogers' vehicle immediately—prior to the Court's consideration of its argument that it would not be adequately protected by an extension of the automatic stay—and then the Court declined to extend the stay past 30 days, TitleMax would have incurred substantial costs if it were again to repossess the vehicle, a concern highlighted by the bankruptcy court in *Young*:

> [P]repetition repossession is often undertaken to assure adequate protection (such as when a car is uninsured or a lack of interest payments has increased the liability above the car's liquidation value). Congress likely did not intend to alter the status quo of repossessed property until the question of adequate protection could be addressed. . . .
>
> [F]orcing immediate turnover without addressing adequate protection . . . would render the costs of prepetition repossession a totally wasted expense when the lack of adequate protection leads to relief from the automatic stay and a second repossession. That would represent an unwarranted alteration of the parties' prepetition bargaining strengths . . . .

*Young*, 193 B.R. at 626–27.

In short, it is anything but clear that TitleMax violated section 542(a) by failing to return Ms. Rogers' vehicle until after the Court considered its objection to her motion to continue the automatic stay and adequate protection concerns.

Nevertheless, even assuming that section 542(a) is self-executing and TitleMax's conduct violated that provision, the Court finds no basis to award

damages to Ms. Rogers under section 542 or otherwise. First, section 542 requires that certain property be turned over to a debtor or trustee. It does not, however, provide a mechanism for awarding damages when that property is *not* turned over. *Compare* 11 U.S.C. § 362(k)(1) (authorizing damages for willful stay violations); 11 U.S.C. § 363(n) (authorizing damages related to improper sale of property of the estate).

Second, section 105(a), which allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," does not justify an award of damages in the circumstances. As explained above, courts disagree over whether section 542(a) compels immediate turnover, and TitleMax was not subject to any court order requiring the release of Ms. Rogers' vehicle. *Cf. Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (under section 524, a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" a discharged debt, and parties may be held in civil contempt and sanctioned for violations of a discharge order under section 105(a)).[4]

Ms. Rogers has been experiencing financial difficulties for some time, not least as evidenced by her multiple bankruptcy filings. Use of a vehicle appears to be key to her current employment. While the Code specifications on what does and does not violate the section 362(a) stay, particularly as interpreted by the *Fulton* Court, may not yield the "instant" result she seeks, this outcome is part of the balance of debtor and creditor rights which Congress has struck. Albeit some frustrating circumstances for her, Ms. Rogers has not stated a legal basis to find that TitleMax acted outside its rights.

---

[4] In her amended complaint, Ms. Rogers cites *Preferred Ready-Mix, LLC v. Berleth, (In re Preferred Ready-Mix LLC)*, Case No. 21-33369, Adv. No. 22-3040, 2022 WL 16952650, at *1 (Bankr. S.D. Tex. Nov. 14, 2022), as support for a court's ability to sanction a party for violation of sections 542 or 543 of the Bankruptcy Code. But the bankruptcy court in *Preferred Ready-Mix* gave no basis in statutory or case law for its award of sanctions, and that ruling is currently on appeal. For the reasons explained above, this Court declines to follow its example.

## CONCLUSION

For the foregoing reasons, TitleMax is entitled to judgment as a matter of law on all four counts of the debtor's complaint. The Court will issue a separate order consistent with this decision.

Dated: August 21, 2023

By the Court:

Beth E. Hanan
United States Bankruptcy Judge